IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| REGINALD DRAUGHN, | : |
|     Plaintiff, | : |
| | : |
| v. | :  Case No. 2:25-cv-00531-JDW |
| | : |
| THE HONORABLE THOMAS P. MCCABE, *et al.*, | : |
|     Defendants. | : |

## MEMORANDUM

Reginald Draughn asserts against Lt. Dioreo, Officer Dick, Officer Little, Officer Guldan, Officer Carroll, Corporal Gunthrie, and Officer Hirsch. For the following reasons, I will permit Mr. Draughn the option of proceeding only with his Fourteenth Amendment excessive use of force claims against Lt. Dick and Officer Dioreo or filing one final amended complaint if he can cure the deficiencies in his remaining claims.

**I.  FACTUAL ALLEGATIONS**

In the Third Amended Complaint ("TAC"), Mr. Draughn alleges that two unprovoked use of force incidents by Chester County Prison correctional officers violated his civil rights. The first incident occurred on November 14, 2024[1] when Lt. Dioreo and Officer Dick were escorting Mr. Draughn to his cell following his hospitalization for a mini-stroke. When Mr. Draughn refused to enter his cell because maintenance was fumigating,

---

[1] In the TAC, Mr. Draughn does not indicate the year this incident occurred, but in a pleading filed shortly before the TAC, he asserts the incident occurred in 2024.

the two officers jumped him, Lt. Dioreo stomped on Mr. Draughn's head and cut the clothes from his body while Officer Dick held Mr. Draughn and squeezed his handcuffs. As a result, Mr. Draughn suffered an injury to his jaw and a torn rotator cuff.

In the second incident, Mr. Draughn alleges that on March 23, 2025,[2] after he asked to be released, Officer Little left the block then returned with Officers Carroll, Guldan, and Hirsch, and the four Officers assaulted and maced Mr. Draughn, then continued the assault on the medical block joined by Corporal Gunthrie. He sustained ongoing injuries to his right knee.

On March 31, 2025, I screened Mr. Draughn's initial Complaint and dismissed it with leave to amend. Mr. Draughn filed a First Amended Complaint and then a Second Amended Complaint. On May 12, 2025, I screened the Second Amended Complaint and dismissed it without prejudice. That same day, Mr. Draughn filed a motion with the Court in which he asks the Court "to dismiss my suit in anyway." (ECF No. 35.) Based on the subsequent filings, I interpret that as a request that I dismiss the state criminal proceedings against him, not this case. On May 20, 2025, Mr. Draughn filed a two-page handwritten document titled "Amended Complaints." Then, on May 28, 2025, he filed an amended complaint using the Court's form for pro se complaints. I construe the later-filed document as the operative Third Amended Complaint ("TAC"). I understand the TAC

---

[2] Mr. Draughn does not indicate the date this incident occurred in the TAC, but in a pleading filed shortly before the TAC, he asserts the incident occurred on March 23, 2025.

2

to assert claims under the Fourteenth Amendment for excessive use of force. Mr. Draughn seeks monetary damages of $200 million, for his medical bills to be paid, and for his mother's medical bills to be paid.[3]

## II.    STANDARD OF REVIEW

Although Mr. Draughn has paid the filing fee in full, because he is incarcerated the Court has the authority to screen his Complaint pursuant to 28 U.S.C. § 1915A. *See Shane v. Fauver*, 213 F.3d 113, 116 n.2 (3d Cir. 2000). Section 1915A requires that the Court "review, before docketing, if feasible or, in any event, as soon as practicable after docketing, a complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity." 28 U.S.C. § 1915A(a). In doing so, the Court must dismiss a complaint or any portion thereof that "is frivolous, malicious, or fails to state a claim upon which relief may be granted," *id.* § 1915A(b)(1), or that "seeks monetary relief from a defendant who is immune from such relief," *id.* § 1915A(b)(2).

A complaint is frivolous if it "lacks an arguable basis either in law or in fact." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). It is legally baseless if "based on an indisputably meritless legal theory," *Deutsch v. United States*, 67 F.3d 1080, 1085 (3d Cir. 1995), and

---

[3] To the extent Mr. Draughn seeks to assert claims for monetary damages on behalf of his mother, he cannot do so because a *pro se* litigant can only assert claims on his own behalf. *See Minor v. United States Police*, No. 20-4151, 2020 WL 6083505, at *2 (E.D. Pa. Oct. 15, 2020).

factually baseless "when the facts alleged rise to the level of the irrational or the wholly incredible." *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). The same standard applicable to motions to dismiss under Federal Rule of Civil Procedure 12(b)(6) governs this analysis. *See Tourscher v. McCullough*, 184 F.3d 236, 240 (3d Cir. 1999). I must determine whether the Complaint contains "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotations omitted). That means I must accept the factual allegations in the Complaint as true, draw inferences in favor of the plaintiff, and determine whether there is a plausible claim. *See Shorter v. United States*, 12 F.4th 366, 374 (3d Cir. 2021). Conclusory allegations do not suffice. *See Iqbal*, 556 U.S. at 678. When a plaintiff is proceeding *pro se*, I construe his allegations liberally. *See Vogt v. Wetzel*, 8 F.4th 182, 185 (3d Cir. 2021).

### III. DISCUSSION

Mr. Draughn appears to assert the violation of his Fourteenth Amendment rights.[4] The vehicle by which federal constitutional claims may be brought in federal court is 42 U.S.C. § 1983. "To state a claim under § 1983, a plaintiff must allege the violation of a right

---

[4] In drafting his TAC, Mr. Draughn checked the boxes on the form he used indicating that he seeks to name the Defendants in their official capacities only. Mr. Draughn appears not to have understood the implication of checking the official capacity box. Claims against municipal employees such as Lt. Dioreo named in their official capacity are indistinguishable from claims against the governmental entity that employs the Defendant, which in this case is Chester County. *See Kentucky v. Graham*, 473 U.S. 159, 165-66 (1985) Because Mr. Draughn does not attempt to allege facts to render Chester County liable, I will construe the TAC to assert claims against the Defendants in their individual capacities.

secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988).

### A. Excessive Use Of Force

Mr. Draughn appears to allege that in both incidents described in the TAC, the Defendants used excessive force against him in violation of his civil rights. Because Mr. Draughn was a pretrial detainee during the relevant event, the Due Process Clause of the Fourteenth Amendment governs his excessive force claims. *Kingsley v. Hendrickson*, 576 U.S. 389, 397 (2015). To state a due process violation based on excessive force, a pretrial detainee must allege plausibly that "that the force purposely or knowingly used against him was objectively unreasonable." *Id*. at 396-97. "Considerations such as the following may bear on the reasonableness or unreasonableness of the force used: the relationship between the need for the use of force and the amount of force used; the extent of the plaintiff's injury; any effort made by the officer to temper or to limit the amount of force; the severity of the security problem at issue; the threat reasonably perceived by the officer; and whether the plaintiff was actively resisting." *Id.* at 397. Whether unreasonable force has been used against a detainee "requires 'careful attention to the facts and circumstances of each particular case.'" *Jacobs v. Cumberland Cnty.*, 8 F.4th 187, 194 (3d Cir. 2021) (quoting *Graham v. Connor*, 490 U.S. 386, 396 (1989)). Courts should analyze "these circumstances 'from the perspective of a reasonable officer on the scene'" while

keeping in mind that decisions about force require the expertise of correctional officers, "'who must have substantial discretion to devise reasonable solutions to the problems they face.'" *Id.* at 195 (quoting *Kingsley*, 576 U.S. at 397 & 399). "The use of chemical agents to subdue recalcitrant prisoners is not cruel and unusual when reasonably necessary." *Gibson v. Flemming*, 837 F. App'x 860, 862 (3d Cir. 2020) (quoting *Soto v. Dickey*, 744 F.2d 1260, 1270 (7th Cir. 1984)); *see also Passmore v. Ianello*, 528 F. App'x 144, 147 (3d Cir. 2013) (*per curiam*) (explaining that the use of chemical agents is not a per se constitutional violation).

        **1.**         **November 14, 2024**

Accepting as true Mr. Draughn's allegations as to the incident on November 14, 2024, he states a plausible claim for excessive use of force against both Lt. Dioreo and Officer Dick. On that date, Mr. Draughn had recently returned from a hospital stay and required the use of a walker. When he refused to enter his cell where prison staff were fumigating, Lt. Dioreo stomped on Mr. Draughn's head while Officer Dick restrained him by squeezing his handcuffs. Mr. Draughn suffered an injury to his jaw and what he believes is a torn rotator cuff. While a refusal to follow a correctional officer's orders might warrant some application of use of force, Mr. Draughn plausibly alleges that the response in this case was disproportionate to the threat he posed, particularly in light of his limited mobility and recently having suffered a mini-stroke.

### 2. March 23, 2025

Mr. Draughn alleges that Officers Carroll, Guldan, Hirsch, Little, and Corporal Gunthrie used excessive force against him on March 23, 2025. As in his Second Amended Complaint, however, Mr. Draughn fails to allege with specificity what each individual Defendant did to violate his constitutional rights or to describe the circumstances that prompted the use of force. He again asserts that the five Defendants "assaulted" and "maced" him after he asked about his release. (ECF No. 38 at 5.) Other than stating that Corporal Gunthrie maced him on the medical block, he describes the actions of the five Defendants as a group, which is insufficient to allege personal involvement. *See Lawal v. McDonald*, 546 F. App'x 107, 113 (3d Cir. 2014). Without the basic facts of what each Defendant did in the incident, I cannot "draw the reasonable inference that [any named] defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. Mr. Draughn also does not describe the circumstances that led to the alleged use of force other than stating that he asked Officer Little about his release. Without additional facts, Mr. Draughn fails to plausibly allege that the Officers' actions were objectively unreasonable. I will give Mr. Draughn one final opportunity to allege additional facts, including the ones in his filing titled "Amended Complaints" and dated May 20, 2025, to try to allege a plausible claim against each of these Defendants.

### B.     Allegations Related To Pending Criminal Proceeding

Mr. Draughn also appears to challenge the legality of his incarceration and the criminal case against him, stating, "my case has been dismissed well over 4 years ago and I'm being unlawfully detained." (ECF No. 38 at 3.) Liberally construed, Mr. Draughn seeks release from Chester County Prison or the dismissal of the pending criminal case against him.[5] To the extent Mr. Draughn seeks release from incarceration, he may not do so in this civil suit because such a claim challenges the fact or duration of his confinement and so falls within "the core of habeas corpus." *Preiser v. Rodriguez*, 411 U.S. 475, 500 (1973). In addition, there are no factual allegations to suggest that the correctional officers that Mr. Draughn names as Defendants had any personal involvement in the fact of Mr. Draughn's arrest, prosecution, and detention. To the extent he seeks to challenge the legality of his incarceration, Mr. Draughn must do so through a habeas corpus action naming the appropriate defendant(s).

## IV.    CONCLUSION

I will permit Mr. Draughn to proceed on his Fourteenth Amendment excessive use of force claim against Lt. Dioreo and Officer Dick, but I will dismiss the Fourteenth Amendment claims against Officers Carroll, Guldan, Hirsch, Little, and Corporal Gunthrie

---

[5] Mr. Draughn is awaiting trial in *Commonwealth v. Draughn*, CP-15-CR-0002835-2021, on charges of (1) giving a materially false written statement in the purchase, delivery, or transfer of a firearm; and (2) making a written false statement with the intent to mislead a public servant in performing his official function.

for failure to state a claim. I will give Mr. Draughn one final opportunity to file an amended complaint if he is capable of correcting the defects that I have identified in his claims against Officers Carroll, Guldan, Hirsch, Little, and Corporal Gunthrie. An appropriate Order follows.

**BY THE COURT:**

*/s/ Joshua D. Wolson*
**JOSHUA D. WOLSON, J.**

June 10, 2025